UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
COURT FILE NO.: 20-cv-2664

| | |
|---|---|
| Hai Hua Li,<br><br>　　　　　Plaintiff,<br>v.<br><br>JPMorgan Chase Bank, N.A.,<br><br>　　　　　Defendant. | **COMPLAINT**<br><br>**WITH JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of Defendant JPMorgan Chase Bank, N.A.'s (hereinafter "Defendant") violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

## JURISDICTION

2. Jurisdiction of this Court is proper pursuant to 15 U.S.C. § 1681, 28 U.S.C. § 1331, and 28 U.S.C. § 1367 for Plaintiff's pendent common law claim of credit defamation against Defendant.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the conduct in question occurred in this District, Plaintiff resides in this District, and Defendant transacts substantial business in this District.

## PARTIES

4. Plaintiff, Hai Hua Li (hereinafter "Plaintiff"), is a natural person who resides in the city of Maple Grove, county of Hennepin, state of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant, JPMorgan Chase Bank, N.A., (hereinafter "Defendant"), is a bank that is licensed to do business in the State of Minnesota and regularly conducts business in said State. Defendant has a principal place of business located at 270 Park Avenue, New York, New York, 10017. Defendant is a "person" as defined in 15 U.S.C. § 1681a(b) and a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b).

## PURPOSE OF THE FAIR CREDIT REPORTING ACT

6. Consumer credit plays a major role in the lives of American consumers entering into the American marketplace and the economic system in general. Fair and accurate credit reporting acts as a gatekeeper to credit purchases, employment and income, basic commercial services, insurance coverage, housing rentals, and a broad range of other transactions. Robert J. Hobbs & Stephen Gardner, THE PRACTICE OF CONSUMER LAW 39-40 (2nd ed. 2006).

7. Congress investigated and determined that the banking system is dependent upon fair and accurate reporting, that inaccurate credit reports directly impair the efficiency of the banking system, and that unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. 15 U.S.C. § 1681(a)(1).

2

8. The FCRA was created to "ensure fair and accurate credit reporting, promote efficiency, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007).

9. The FCRA was proposed in 1968 as an amendment to the original Truth in Lending Act. Senator Proxmire (D-WI) announced his intention to create legislation addressing the growing frequency of cases in which a consumer "is unjustly denied because of *faults or incomplete information in a credit report*," and entered an initial draft of what would eventually become the FCRA into the Congressional Record. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 114 Cong. Rec. 24904 (Aug. 2, 1968)) (emphasis added).

10. Senator Proxmire listed five types of abuses requiring Congressional response, including biased or one-sided information and incomplete information. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 115 Cong. Rec. 2411 (Jan. 31, 1969)).

11. Congress considered inaccurate and misleading information to be the most serious problem. Anthony Rodriguez et al., FAIR CREDIT REPORTING 10 (5th ed. 2002).

12. The FCRA applies to situations in which information relevant to a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" is collected. Anthony Rodriguez et al., FAIR CREDIT REPORTING 5 (5th ed. 2002) (citing 15 U.S.C. § 1681a(d)).

13. An inaccurate or misleading credit report can not only significantly and unfairly lower a consumer's credit worthiness, but can also prevent consumers from full

access to the American marketplace and negatively impact a consumer's living standard and general reputation on the whole if a consumer's character and mode of living is not accurately portrayed. Congress enacted the FCRA to prevent this arbitrary and iniquitous result.

14. Furthermore, in 1996, Congress, in an effort to increase the "accuracy and integrity" of information supplied to credit reporting agencies, added 15 U.S.C. § 1681s-2 to the FCRA by passing the Consumer Credit Reform Act. The provision, "[r]esponsibilities of furnishers of information to consumer reporting agencies," subjected data furnishers, who were not previously covered by the FCRA, to requirements related to accuracy and the handling of consumer disputes. These provisions were originally scheduled to sunset in 2003 but were considered important enough to Congress to be made permanent in the Fair and Accurate Credit Transactions Act of 2003. (Federal Trade Commission Staff: 40 Years of Experience with the Fair Credit Reporting Act, pp. 1, 2, 92. Retrieved from the FTC website: http://www.ftc.gov/os/2011/07/110720fcrareport.pdf).

## FACTUAL ALLEGATIONS

15. Sometime in or about March 2020, Plaintiff got notification from his credit monitoring service that someone had attempted to open a credit card account using Plaintiff's personal identifying information.

16. Plaintiff then began reviewing his credit reports.

17. Plaintiff discovered that someone had used his personal identifying information to open a credit card (account #424631XXXXXX) and a checking account with

4

Defendant and also opened a business in St. Louis, MO.

18. Plaintiff immediately contacted Defendant and reported the fraud.

19. In April 2020 Plaintiff went in person to the Defendant's St. Louis Park branch and explained that the identity thief was attempting to open several accounts as well as obtain the PPP money available from the government due to Covid-19 pandemic.

20. Plaintiff continued to communicate with Defendant's agents via email concerning the same fraudulent issues and explained that he had nothing to do with any applications. At that time he provided a copy of the Maple Grove Police report described herein.

21. Defendant sent to Plaintiff a letter dated March 3, 2020 acknowledging the fraud claim.

22. On April 3, 2020 Chase confirmed that Plaintiff was responsible for the account ending 8775 and sent Plaintiff a letter asserting the same.

23. On April 10, 2020 Chase sent to Plaintiff a letter acknowledging a fraud claim related to application in Plaintiff name for an account ending in 0346.

24. On April 23, 2020 Chase sent to Plaintiff a letter requesting more information concerning a fraud claim for an account ending in 1315.

25. On April 30, 2020 Chase sent Plaintiff a letter confirming that Plaintiff was responsible for the account ending 0346.

26. On June 3, 2020 Chase sent Plaintiff a letter confirming that Plaintiff was not responsible for the account ending 1315.

27. In May 2020 Plaintiff meet with Erica at Defendants Minneapolis branch and

5

provided to her a completed Chase Identify Theft Declaration dated May 19, 2020 and also gave her his driver's license and she made a copy for the fraud teams investigation.

28. Defendant began a fraud investigation related to account 424631XXXXXX.

29. Plaintiff also filed a police report with the Maple Grove Police Department, Incident # MG20004558 on April 10, 2020.

30. Plaintiff disputed the false and fraudulent account information with the credit reporting agencies pursuant to 15 U.S.C. 1681i.

31. In turn the credit reporting agencies then communicated Plaintiff's dispute to Defendant.

32. Defendant failed to conduct a reasonable investigation and verified the fraudulent account 424631XXXXXXXX as belonging to Plaintiff in violation of 15 U.S.C. 1681s-2(b).

33. Plaintiff continued his dispute campaign and attempted to clear his name and impeccable credit profile by communicating directly with Defendant.

34. Plaintiff reviewed his credit reports again in August 2020.

35. Specifically, Plaintiff's Experian credit report dated August 27, 2020, contained the fraudulent Defendant credit card account (account #424631XXXXXX).

36. On or about September 9, 2020, Plaintiff mailed letters to the credit reporting agencies and disputed the fraudulent Defendant account (account #424631XXXXXX) pursuant to 15 U.S.C. §1681i.

37. Thereafter the credit reporting agencies, specifically Experian, forwarded Plaintiff's dispute information to Defendant for investigation as required by 15 U.S.C. § 1681(a)(2).

38. Experian sent an ACDV to Defendant regarding account number 424631XXXXXX.

39. Defendant verified to Experian that account number 424631XXXXXX belonged to Plaintiff and was accurately reporting on his credit report, in violation of 15 U.S.C. § 1681s-2(b). Defendant's reporting adversely and/or negatively affected Plaintiff's credit profile and again failed to update the tradeline as "disputed" when Defendant was aware that Plaintiff's dispute was legitimate.

40. Defendant violated 15 U.S.C. §1681s-2(b) when it received the notification of disputes from the credit reporting agencies concerning the Plaintiff's disputed account and failed to conduct a reasonable investigation and failed to delete the fraudulently opened account that did not belong to Plaintiff and failed to update the reporting to show that the account was "disputed".

41. Plaintiff continued to communicate directly with Defendant explaining that he was a victim of identity theft and being led to believe that Defendant was still investigating his claims.

42. On September 30, 2020 Plaintiff had a telephone conversation with someone in Defendant's fraud department who admitted to him that the account in question was determined to be fraud.

43. As a result of Defendant's inaccurate and malicious reporting to the credit reporting agencies that Plaintiff's fraudulent account was charged off in the amount of

$14,182 and that he refused to make payments for several months, Plaintiff has suffered reduced credit, emotional distress, embarrassment, frustration, distraction from work, loss of sleep, and anxiety constituting actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and § 1681n.

44. Plaintiff is entitled to attorney's fees and costs from Defendant pursuant to 15 U.S.C. § 1681o(a)(2) and § 1681n.

45. Defendants false and negative credit reporting has caused Plaintiff's credit score to go down considerably.

46. Plaintiff's credit profile save and accept for Defendant's reporting of the fraudulent account is impeccable and pristine.

47. Plaintiff takes great care in working and guarding his credit report/score and is now embarrassed and humiliated that his score is not perfect as it should be without the Defendant's adverse account.

48. Defendants conduct has caused Plaintiff to be delaying refinancing opportunities and his lenders have told him that he will not obtain the best possible rates until the Defendant's adverse and harmful reporting is removed from his credit profile.

## TRIAL BY JURY

49. Plaintiff is entitled to, and hereby demands, a trial by jury. US Const. amend. VII; Fed. R. Civ. P. 38.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT – 15 U.S.C. § 1681 *et seq.*

50. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

51. Defendant violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it and documentation provided by Plaintiff, and failing to update and/or remove the inaccurate tradeline or, in the alternative, to report the account as "disputed" by changing the Metro II CCC (Compliance Condition Codes) Code to "XB."

52. As a result of Defendant's violations of the FCRA, Plaintiff has suffered actual damages not limited to out-of-pocket expenses, detriment to his credit rating, emotional distress, embarrassment, mental anguish, anxiety, and humiliation in an amount to be determined at trial.

53. Defendant's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

54. Alternatively, Defendant's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

55. Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant for:

- actual, statutory and punitive damages, and costs and attorneys' fees for Defendant's violations of the FCRA, pursuant to 15 U.S.C §§ 1681n and 1681o, in an amount to be determined at trial; and
- for such other and further relief as the Court may deem just and proper.

Dated this 29th day of December, 2020.

By: s/Thomas J. Lyons Jr.
Thomas J. Lyons, Jr., Esq.
Attorney I.D. #: 249646
**CONSUMER JUSTICE CENTER, P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
Facsimile: (651) 704-0907
tommy@consumerjusticecenter.com

*ATTORNEY FOR PLAINTIFF*

## VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

I, Hai Hua Li, declare under penalty of perjury, as provided for by the laws of the United States, 28 U.S.C. § 1746, that the following statements are true and correct:

1. I am the Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all the facts contained in it are true, to the best of my knowledge, information, and belief, formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

Dated this 22 day of December 2020.

s/Hai Hua Li<br>
Hai Hua Li